Tbe opinion of tbe Court was delivered by
DargAN, Ch.
It will not be necessary to consider tbe appellant’s ten grounds of appeal seriatim. They may, in substance, be resolved into tbe several propositions discussed in tbe circuit decree, and, to most of what has been said by way of argument on tbis bearing, tbe reasoning of tbe Circuit decree is a sufficient answer.
As a matter of fact, and from tbe evidence before us, we *237 are of opinion, that tbe sum of one hundred and eighty-eight thousand dollars, bid by the plaintiffs for the Sayannah River plantation of the testator, with the one hundred and forty-two negroes thereon, and the stock, seed-rice, &c., was a full and fair consideration, and the purchase cannot be questioned on that score. If there had been any doubt upon this point, and it had been satisfactorily shown that further and material evidence could have been adduced, bearing upon this question as to the value of the property, and the sufficiency of the bid, the Court would have ordered a reference for further investigation; and the Circuit Court, under like circumstances, would have felt itself called to pursue the same course. But the evidence seems to be full and ample. The Court is satisfied with the decision upon that evidence. And it does not appear that further investigation would elicit further light.
- The manner of the sale was unquestionably informal and irregular; and if the executors had, under these circumstances, sold the property to a stranger for less than its value, I doubt not that they would have rendered themselves personally liable for the deficiency, to their co-devisees and co-legatees. But if, at a sale even so informal and irregular as this, they had obtained from a stranger a full and fair 'price, Avhat more could be required of them ? This is the utmost requirement of the law. Therefore, it may be said, that a full price would cure all irregularities in the manner of the sale. And if a sale of this kind was in the highest degree regular, and every usual and appropriate form observed, it is impossible, both by the statute law and the decisions, for the executors to make a profit to themselves by becoming the purchasers. Under any and all circumstances, they, as purchasers, are to be charged with the true value of the property, and the Court, when its aid is invoked to that end, will impose such conditions upon them as will make the purchase money secure.
It is said, that the sale ought to be set aside, because Mr *238 Wilkinson (one of tbe parties in interest) was excluded from competition at tbe sale by an odious condition. To understand this objection, an explanation is necessary. The testator had a faithful and favorite slave named Jackey, who was a kind of steward, kept the keys, &c., and was eminently trustworthy. Him tbe executors wished to favor, and accorded to him the privilege of “choosing his masterin other words, of electing the person to whom he should be sold. And when the plantation, negroes, &c., were put up for sale in solido, one of the conditions, was, that Jackey, with his family, should have the privilege of going with the gang to the purchaser, or of being detached from the purchase; deducting from the bid for the whole the appraised value of Jackey and his family. This was the condition said to be odious, and to exclude Mr. Wilkinson from competing at the sale.
The executors, as I have said, were bound to no form of sale, nor restricted to any specific terms. Their authority was so plenary, that after the property had been put up at auction, and the biddings commenced, they might have withdrawn it from sale at auction, and disposed of it at private contract, on different conditions from those advertised. • The only condition annexed to their authority was one implied by law, that they should use judicious means to obtain the value of the property, and to be personally liable if they did not. And so, as to Jackey, the authority of the executors was unlimited. They had the power of a proprietor, and might indulge their discretion, and even their caprice, in selecting their vendee. If they had excluded Mr. Wilkinson expressly and by name from the competition, it might be considered as discourteous and unfriendly; but, a fair price being obtained, I do not perceive how such conduct could be made the ground of setting aside a sale otherwise valid. But whatever may have been the intention, from the evidence it is not to be inferred that this condition was aimed personally at Mr. Wilkinson. It was a condition annexed to the sale, and had relation to all *239 bidders — 'the executors themselves, members of the family, and strangers alike. It is perhaps a matter of regret, that the executors had not been more accommodating to the feelings of Mr. W., in this particular, or exercised their undoubted privilege in a manner less offensive to him. But of this they were entitled to judge for themselves. With the private motives (if any there were), the private feelings and relations of the parties, the Court has nothing to do.
This condition as to Jackey, so offensive to Mr. W., who considered it as aimed personally at him, was the cause of his withdrawing from private negotiation for the property. The same cause prevailed in preventing him from entering into competition at the public sale. And on the next day, when Mr. Izard offered to let him have the property if he would advance upon his bid, he refused to entertain the proposition, unless the condition as to Jackey was withdrawn. Under these circumstances, it is vain to say, taking any view of the case that can be entertained in a court of justice, that this sale is to be opened for anything arising from, or connected with, the condition complained of: I have now done with that part of the case, which may be considered as involving questions of fact.
In addition to what I have said in the circuit decree, I purpose to make a few remarks upon the construction of the Act of 1839. In the argument for the appellants, it is strenuously urged, that this Act does not confer upon executors and administrators the right of purchasing real estate at their own sales. The Act, in declaring the right to purchase, says, “ and the property so purchased shall he vested in him or her," &c. It is asked, how can the legal estate pass by such a sale as this ? — a sale by an executor to himself. While it is very easy to perceive how personal property might pass by such a sale, it is said that this is a mode of transferring the legal title of real estate unknown to the law, and is incompatible with its general provisions. In the first place it may be *240 observed, that the Act does not declare that the legal estate shall pass. There are two kinds of title known to the law, namely, legal titles and equitable titles. And a person may be as properly said to be vested with an equitable title, as with one which is purely legal. The language of the Act does not demand, that in its proper interpretation, it should be consid ered as meaning the legal estate only. But waiving this, as perhaps not the proper ground upon which the interpretation given in the circuit decree is to be sustained, the argument against this interpretation requires, that it should be considered as a principle of law, that the legal estate cannot pass without a deed of conveyance, or a will; whereas, nothing is more common, nor has been from the earliest ages of the common law, than for the legal estate to pass by operation of law, as in all cases of descent. At every session of the Legislature, there is some Act passed vesting the legal title of escheated property in persons supposed to have good equitable claims. And certainly, it is as little absurd for the Legislature, by an Act, to vest the legal title by future conditions to happen, -as upon conditions which have already happened. And when the Act of 1839 declares, that the property pur-, chased by an executor, at his own sale, shall be vested in him, there is nothing unreasonable, inconsistent or unusual in it. The legal title to real estate may pass by a decree of this Court; and this is a constant and every day practice. In cases of partition, when the return to the writ is made and confirmed, it is not necessary that all the parties, to whom portions have been allotted, should mutually and interchangeably execute and deliver deeds, to vest each of the distributees in severalty with the title to the separate portion which has been allotted to him. This is effected by a decree, and henceforth, each party is seized in severalty of his particular share, and the rest divested of their legal estate in such share, which before the decree they had, as tenants in common. And when the commissioners, as they are authorized by the Act to do, *241 recommend that tbe whole estate be assigned to one of tbe tenants in common, on bis paying to tbe others their share of tbe price at which the land has been valued, and such dis-tributee consents to accept the land on tbe terms prescribed, no deed of conveyance from his co-tenants is necessary to vest him with the legal title of their share; but a decree of the Court is sufficient for such purpose. These familiar examples and illustrations show, that the provision of the Act of 1889, which declares that the property of his testator, purchased by an executor at his own sale, shall be vested in him, is no anomaly.
The Act, in declaring the competency of an executor or administrator to purchase on-certain conditions, proceeds, in the second section, to provide, that “ if any executor or executrix shall purchase any property at the sales of the estate of his or her testator, he or she shall give bond, with surety, to the Ordinary of the district, conditioned for the payment of the purchase money of the said property.” I have held, in the circuit decree, that the condition imposed in this section of the Act, is not a condition precedent, or essential to the validity of the purchase. This Court concurs in the correctness of the construction. On the hearing of this appeal, this point has been so earnestly contested, that it will be proper to make a few additional observations. It is remarked, that this section requires an executor to give bond to the Ordinary, while an administrator is not so required. Erom which it is insisted, that as the jurisdiction of the Ordinary only relates to the personal estate, the power of the executor to purchase is restricted to that species of property. That the Ordinary having no power over the real estate, it would be inconsistent and anomalous to require the bond for such estate to be given to him. That, in the case of an administrator, the administration bond covers all his defalcations as regards the proceeds of the sale of the personal estate, but not of his purchases of real estate. Hence, it is inferred, that *242 an administrator’s power to purchase is restricted to personal estate; and as an executor and administrator are, or should reasonably be, put upon the same footing, it is concluded that the power given to an executor to purchase is also confined to the personal estate. The logical sequence of this deduction, to my mind, is not very obvious. A better reason for the difference made between an executor and administrator, as to the requirement of the bond to the Ordinary, can be given — a reason which makes the provisions of the Act perfectly consistent. The administrator gives an administration bond to the Ordinary; an executor does not. The penalty of the administration bond is double the value of the estate to be administered. The powers and duties of an administrator relate wholly to the personal estate. He can never, by any legal possibility, have, as regards real estate, any sale of Ms own, under his authority as administrator. Therefore, his administration bond, if well taken, is a sufficient protection to the parties in interest against the consequences of his devas-tavit. Another bond, for the same purpose, would be an unnecessary exaction. Not so with an executor; who, though not required, as executor, to give a bond (because the testator has reposed in him a personal confidence), may, and often does, have power given to him, by the will, to sell both real and personal estate. And when, under this authority, or that of a decree of a Court of competent jurisdiction, he sells, and becomes a purchaser at his own sale, the Act interposes, and declares that he must be charged with the true value, whatever may have been the amount of the bid, and that he must give bond, with surety, to the Ordinary, whether the purchase be of real or personal estate. Surely, under this interpretation, there is no incongruity in the provisions of this Act, and its operation harmonises with the powers, duties and responsibilities of executors and administrators.
The provision of the second section of the Act, that in the case of a purchase by an executor, a bond shall be given to *243 the Ordinary, is not a nullity. The requirement is imperative, though no time is prescribed for its pei’formance. If the executor purchasing were to pay, or to tender payment of the money to the parties entitled to receive it, the requirements of the Act would be satisfied. And so, where the sale is on a credit, and he comes, within a reasonable time, and executes bond to the Ordinary, as the Act requires, it is sufficient.
The plaintiffs in this case express their willingness, and now offer to comply with the provision of the Act of 1839, as to the giving of a bond to the Ordinary. And, in the opinion of the Court, it is not too late for them to do so. And, though their non-compliance heretofore does not invalidate the sale, it is the duty of the Court, when invoked do confirm it, to impose upon the executors, purchasing at their own sales, all the conditions prescribed by the law. It is therefore ordered, that the said executors, purchasers at their own sales, as in the bill stated, do, within sixty days from the announcement of this decree, execute a bond to the Ordinary of the district where the property is situate, for the purchase money, as required by the Act, the liens given by the circuit decree to remain the same as therein expressed. The circuit decree, in this respect, proceeds upon the doctrine of an equitable mortgage. In all such cases, I incline to think that a lien, in the nature of an equitable mortgage, would be set up. This is my individual opinion, however, and not that of the Court, From that part of the circuit decree no appeal was taken, and it has not been discussed, either at the bar or in the confer enees of the Court.
It is ordered and decreed, that, except so far as herein modified, the circuit decree be affirmed, and the appeal dismissed.
JOHNSTON, Dunkin and Wardlaw, CC., concurred.

Appeal dismissed.